Justice Scalia,
concurring in the judgment.
I fail to see how an inference that is merely “at least as compelling as any opposing inference,” ante, at 314, can conceivably be called what the statute here at issue requires: a “strong inference,” 15 U. S. C. § 78u-4(b)(2). If a jade falcon were stolen from a room to which only A and B had access, could it possibly be said there was a “strong inference” that B was the thief? I think not, and I therefore think that the Court’s test must fail. In my view, the test should be whether the inference of scienter (if any) is more plausible than the inference of innocence.*
*330 The Court’s explicit rejection of this reading, ante, at 323-324, and n. 5, rests on two assertions. The first (doubtless true) is that the statute does not require that “[t]he inference that the defendant acted with scienter ... be irrefutable, i. e., of the ‘smoking-gun’ genre,” ante, at 324. It is up to Congress, however, and not to us, to determine what pleading standard would avoid those extremities while yet effectively deterring baseless actions. Congress has expressed its determination in the phrase “strong inference”; it is our job to give that phrase its normal meaning. And if we are to abandon text in favor of unexpressed purpose, as the Court does, it is inconceivable that Congress’s enactment of stringent pleading requirements in the Private Securities Litigation Reform Act of 1995 somehow manifests the purpose of giving plaintiffs the edge in close cases.
The Court’s second assertion (also true) is that “an inference at least as likely as competing inferences can, in some cases, warrant recovery.” Ante, at 324, n. 5 (citing Summers v. Tice, 33 Cal. 2d 80, 84-87, 199 P. 2d 1, 3-5 (1948)). Summers is a famous case, however, because it sticks out of the ordinary body of tort law like a sore thumb. It represented “a relaxation” of “such proof as is ordinarily required” to succeed in a negligence action. Id., at 86,199 P. 2d, at 4 (internal quotation marks omitted). There is no indication that the statute at issue here was meant to relax the ordinary rule under which a tie goes to the defendant. To the contrary, it explicitly strengthens that rule by extending it to the pleading stage of a case.
*331 One of petitioners’ amici suggests that my reading of the statute would transform the text from requiring a “strong” inference to requiring the “strongest” inference. See Brief for American Association for Justice as Amicus Curiae 27. The point might have some force if Congress could have more clearly adopted my standard by using the word “strongest” instead of the word “strong.” But the use of the superlative would not have made any sense given the provision’s structure: What does it mean to require a plaintiff to plead “facts giving rise to the strongest inference that the defendant acted with the required state of mind”? It is certainly true that, if Congress had wanted to adopt my standard with even greater clarity, it could have restructured the entire provision — to require, for example, that the plaintiff plead “facts giving rise to an inference of scienter that is more compelling than the inference that the defendant acted with a nonculpable state of mind.” But if one is to consider the possibility of total restructuring, it is equally true that, to express the Court’s standard, Congress could have demanded “an inference of scienter that is at least as compelling as the inference that the defendant acted with a nonculpable state of mind” Argument from the possibility of saying it differently is clearly a draw. We must be content to give “strong inference” its normal meaning. I hasten to add that, while precision of interpretation should always be pursued for its own sake, I doubt that in this instance what I deem to be the correct test will produce results much different from the Court’s. How often is it that inferences are precisely in equipoise? All the more reason, I think, to read the language for what it says.
The Court and the dissent criticize me for suggesting that there is only one reading of the text. Ante, at 324-325, n. 5; post, at 336, n. 1 (Stevens, J., dissenting). They are both mistaken. I assert only that mine is the natural reading of the statute (i. e., the normal reading), not that it is the only *332 conceivable one. The Court has no standing to object to this approach, since it concludes that, in another respect, the statute admits of only one natural reading, namely, that competing inferences must be weighed because the strong-inference requirement “is inherently comparative,” ante, at 323. As for the dissent, it asserts that the statute cannot possibly have a natural and discernible meaning, since “Courts of Appeals” and “Members of this Court” “have divided” over the question. Post, at 336, n. 1. It was just weeks ago, however, that the author of the dissent, joined by the author of today’s opinion for the Court, concluded that a statute’s meaning was “plain,” Rockwell Int’l Corp. v. United States, 549 U. S. 457, 479 (2007) (STEVENS, J., dissenting), even though the Courts of Appeals and Members of this Court divided over the question, id., at 470, n. 5. Was plain meaning then, as the dissent claims it is today, post, at 336, n. 1, “in the eye of the beholder”?
It is unremarkable that various Justices in this cáse reach different conclusions about the correct interpretation of the statutory text. It is remarkable, however, that the dissent believes that Congress “implicitly delegated significant lawmaking authority to the Judiciary in determining how th[e] [strong-inference] standard should operate in practice.” Post, at 335. This is language usually employed to describe the discretion conferred upon administrative agencies, which need not adopt what courts would consider the interpretation most faithful to the text of the statute, but may choose some other interpretation, so long as it is within the bounds of the reasonable, and may later change to some other interpretation that is within the bounds of the reasonable. See Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc., 467 U. S. 837 (1984). Courts, by contrast, must give the statute its single, most plausible, reading. To describe this as an exercise of “delegated lawmaking authority” seems to me peculiar — unless one believes in lawmakers who have no discretion. Courts must apply judgment, to be sure. But judgment is not discretion.
*333 Even if I agreed with the Court’s interpretation of “strong inference,” I would not join the Court’s opinion because of its frequent indulgence in the last remaining legal fiction of the West: that the report of a single committee of a single House expresses the will of Congress. The Court says, for example, that “Congresses] purpose” was “to promote greater uniformity among the Circuits,” ante, at 321, relying for that certitude upon the statement of managers accompanying a House Conference Committee Report whose text was never adopted by the House, much less by the Senate, and as far as we know was read by almost no one. The Court is sure that Congress “ *inten[ded] to strengthen existing pleading requirements,”’ ante, at 322, because — again— the statement of managers said so. I come to the same conclusion for the much safer reason that the law which Congress adopted (and which the Members of both Houses actually voted on) so indicates. And had the legislation not done so, the statement of managers assuredly could not have remedied the deficiency.
With the above exceptions, I am generally in agreement with the Court’s analysis, and so concur in its judgment.

 The Court suggests that “the owner of the precious falcon would find the inference of guilt as to B quite strong.” Ante, at 324, n. 5. If he should draw such an inference, it would only prove the wisdom of the ancient maxim “aliquis non debet esse Judex in propria causa” — no man *330 ought to be a judge of his own cause. Dr. Bonham’s Case, 8 Co. Rep. 107a, 114a, 118a, 77 Eng. Rep. 638, 646, 652 (C. P. 1610). For it is quite clear (from the dispassionate perspective of one who does not own a jade falcon) that a possibility, even a strong possibility, that B is responsible is not a strong inference that B is responsible. “Inference” connotes “belief” in what is inferred, and it would be impossible to form a strong belief that it was B and not A, or A and not B.